UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

UNITED STATES OF AMERICA

v.                                            CRIMINAL ACTION NO. 5:15-cr-00033

RHINELANDER HERNANDEZ.

**MEMORANDUM OPINION AND ORDER**

Pending is Defendant Rhinelander Hernandez's Renewed Motion for Compassionate Release, filed February 11, 2021. [Doc. 133]. The matter is ready for adjudication.

**I.**

On August 18, 2015, Mr. Hernandez pled guilty to Count Two of an Indictment charging him with Distribution of Heroin in violation of 21 U.S.C. § 841(a)(1). [Doc. 1]. On December 2, 2015, he was sentenced to 120 months imprisonment and 5 years supervised release. [Doc. 148]. The Court found the applicable Guidelines range to be a total offense level of 29 and a criminal history category of VI, resulting in a Guidelines custody range of between 151 and 188 months. [*See* Doc. 137]. The Court varied below the guideline range but indicated a lengthy sentence of imprisonment was necessary given Mr. Hernandez's criminal history.

On June 17, 2020, Mr. Hernandez filed a Motion for Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A). [Doc. 124]. He sought release for extraordinary and compelling reasons, including his chronic health conditions and increased risk for contracting a severe case of COVID-19. He cited his chronic back pain, high blood pressure, borderline diabetes, nerve

problems in his right arm, and status as a former smoker as conditions placing him at high risk. [*Id.* at 2]. On October 19, 2020, the Court denied the motion for failure to demonstrate extraordinary and compelling reasons for release as required by § 3582(c)(1)(A). [Doc. 132].

On February 11, 2021, Mr. Hernandez filed his Renewed Motion for Compassionate Release. [Doc. 133]. Mr. Hernandez asserts FCI Fort Dix utilized improper COVID-19 mitigation efforts. He contends he contracted COVID-19 in December 2020, and he expressed concern over becoming a "long hauler" after having COVID-19. [*Id.*]. At the Court's direction, Mr. Hernandez supplemented his motion on January 3, 2022. [Docs. 135, 136]. He notes that, over one year after initial infection, he suffers from shortness of breath and persistent cough, which he maintains are signs of being a "long hauler." He also claims to suffer from sleep apnea and obesity, though he does not allege these conditions stem from his infection. [Doc. 136 at 1]. Significantly, Mr. Hernandez adds that the career offender sentencing enhancement would no longer apply to his conviction. [*Id.*].

On January 13, 2022, the United States responded that Mr. Hernandez's medical arguments do not warrant release because he is no longer incarcerated at FCI Fort Dix, and he does not challenge the COVID-19 mitigation efforts at USP Lewisburg, where he currently resides. [Doc. 137 at 3–4]. In addition, other than his COVID-19 infection, Mr. Hernandez's reported medical conditions have not changed since the Court considered his first motion for compassionate release. [*Id.* at 4]. Notably, the United States concedes Mr. Hernandez would not be a career offender under our Court of Appeals' current precedent, as his state conspiracy conviction no longer qualifies as a career offender predicate. [*Id.* at 4–5]. However, the United States maintains Mr. Hernandez was not sentenced as a career offender, and his history and characteristics counsel against release. [*Id.* at 5–8].

2

II.

The First Step Act (the "Act") amended 18 U.S.C. § 3582(c)(1)(A) to expand access to compassionate release to incarcerated individuals. Prior to enactment, a court could only consider compassionate release on motion by the BOP. The Act "removed the BOP from that gatekeeping role, authorizing defendants themselves to file motions for sentence reductions." *United States v. McCoy*, 981 F.3d 271, 271 (4th Cir. 2020). Before filing a motion under 18 U.S.C. § 3582(c)(1)(A), the defendant must first exhaust the administrative process established by the BOP or allow "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

To grant an inmate's motion for compassionate release or sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i), the Court must (1) find that extraordinary and compelling reasons warrant a sentence reduction, and (2) consider the relevant 18 U.S.C. § 3553(a) sentencing factors. 18 U.S.C. § 3582(c)(1)(A); *see also McCoy*, 981 F.3d at 280. When analyzing "extraordinary and compelling" reasons, "[t]he district court enjoy[s] broad discretion in conducting [its] analysis." *United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021). The Act "allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence." *Concepcion v. United States*, 213 L. Ed. 2d 731, 142 S. Ct. 2389, 2404 (2022). Our Court of Appeals determined that district courts may take a more individualized approach regarding whether "extraordinary and compelling" reasons are established. *McCoy*, 981 F.3d at 286. District courts may also conclude that the severity of a sentence, "combined with the enormous disparity between that sentence and the sentence a defendant would receive today, can constitute an 'extraordinary and compelling' reason for relief under § 3582(c)(1)(A)." *Id.* at 285 (finding reasoning of multiple district courts persuasive).

As of the date of this Order, the United States Sentencing Commission has not yet amended U.S.S.G. § 1B1.13 to address compassionate release motions filed by defendants. *See United States v. Ferguson*, No. 21-6733, 2022 WL 17256572, at *5 (4th Cir. Nov. 29, 2022); *United States v. Vaughn*, No. 5:08-cr-00266, 2021 WL 136172, at *2 (S.D. W. Va. Jan. 13, 2021) (quoting *McCoy*, 981 F.3d at 282–84). However, "[n]othing in § 3582(c)(1)(A)(i) requires courts to sit on their hands if there is a gap in Commission policy." *McCoy*, 981 F.3d at 284 (internal citation omitted). "[A]s a result, district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *Id.* at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020) (emphasis in original). *But see Ferguson*, 2022 WL 17256572 (compassionate release motions cannot be used to collaterally attack a defendant's conviction or sentence).

Finally, in the context of the COVID-19 Pandemic, "courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *Vaughn*, 2021 WL 136172, at *3 (citing *United States v. Feiling*, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020) (collecting cases)).

### III.

#### A.    *Conditions at FCI Fort Dix and Defendant's Medical Condition*

Mr. Hernandez's medical grounds do not warrant relief. First, as the United States notes, the issue of COVID-19 mitigation efforts at FCI Fort Dix is moot because Mr. Hernandez is no longer housed there. Inasmuch as Mr. Hernandez does not challenge USP Lewisburg's mitigation efforts, and his chronic health conditions appear adequately managed at that facility,

the Court need not scrutinize USP Lewisburg's mitigation efforts.

Second, Mr. Hernandez's concern with being a "long-hauler" also does not warrant early release. The CDC notes shortness of breath and persistent cough are symptoms which may linger after a COVID-19 infection. Other than diagnostic testing, Mr. Hernandez's medical records do not reflect treatment of his initial infection or the persistent symptoms. This indicates to the Court that these lingering symptoms do not substantially impinge upon his daily activities any more than his chronic medical conditions already do. The Court previously considered Mr. Hernandez's chronic conditions and declined to grant relief on that basis. Noting only the additional COVID-19 infection, the Court finds Mr. Hernandez's medical grounds do not constitute extraordinary and compelling reasons warranting a sentence reduction.

### B.   *Application of the Career Offender Sentencing Enhancement*

Mr. Hernandez's most compelling argument concerns his sentencing as a career offender.[1] The Guidelines provide for a career offender enhancement when:

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction;
>
> (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and
>
> (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

---

[1] The Court notes that Mr. Hernandez's claim is properly considered on a motion for compassionate release because it does not constitute a collateral attack on his sentence. *See United States v. Ferguson*, No. 21-6733, 2022 WL 17256572 (4th Cir. Nov. 29. 2022) (holding compassionate release motions cannot be used to challenge the validity of a defendant's conviction or sentence); *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020) (compassionate release motions proper where defendants claimed a change in the sentencing law that occurred after their sentencings, but did not apply retroactively, merited reduction in sentences to conform to that change). The reasons underlying this conclusion will be evident within.

U.S.S.G. § 4B1.1(a).

If sentenced today, Mr. Hernandez's Guideline range would be far less. Mr. Hernandez pled guilty to, and was convicted of, distributing heroin. Under the current edition of the Guidelines, the resulting base offense level is 12.[2] U.S.S.G. § 2D1.1(c). Today, Mr. Hernandez's conduct would not qualify him for the career offender enhancement, as one of his predicate offenses is a state conviction for "Conspiracy to Commit a Felony, to-wit: Delivery of a Schedule II Narcotic Controlled Substance."[3] [Docs. 42, 49]. *See United States v. Campbell*, 22

---

[2] The 2015 United States Sentencing Guidelines converted multiple controlled substances or mixtures of the same to their marijuana equivalency. The Guidelines began using Converted Drug Weight as the unit of measurement for the same after passage of Amendment 808 in 2018. The change from marijuana equivalency to converted drug weight does not affect the drug conversion as it would be applied to Mr. Hernandez today. In 2015, Mr. Hernandez's total marijuana equivalency was calculated as 0.1302 kilograms, resulting in a base offense level of 12 under U.S.S.G. § 2D1.1(c). Under the current Guidelines, 0.1302 kilograms of converted drug weight still provides a base offense level of 12. *See* U.S.S.G. § 2D1.1, n.8.

[3] In 2010, Mr. Hernandez pled guilty to conspiracy to commit a felony in violation of W. Va. Code § 61-10-31. At sentencing for his present offense, the United States maintained, and the Court agrees, that it is necessary to use the modified categorical approach to determine whether this offense triggers the career offender enhancement. The state statute codifies two types of crimes: felonies and misdemeanors. Accordingly, the United States contended it was necessary to review *Shepard* documents, *see Shepard v. United States*, 544 U.S. 13 (2005), to consider the type of crime Mr. Hernandez committed. The underlying state felony charge was delivery of a schedule II narcotic controlled substance, in violation of W. Va. Code § 60A-4-401(a). Our Court of Appeals determined in *United States v. Campbell* that a conviction under this statute is not a "controlled substance offense" supporting career offender status because the statute criminalizes attempts to commit the substantive offense. 22 F.4th 438, 444 (4th Cir. 2022); *see also id.* at 442 n.2 (Attempt is an "inchoate offense incapable of supporting a career offender enhancement." (citing *Borden v. United States*, 141 S. Ct. 1817, 1823 n.3 (2021) (distinguishing between "inchoate crimes (conspiracy or attempts) and accessory liability (aiding and abetting)"))). Under *Campbell*, Mr. Hernandez's underlying state felony charge is incapable of supporting career offender status. Thus, his state conspiracy conviction cannot properly be considered a "controlled substance offense." *But see* United States v. Thomas, No. CR 3:14-00045-1, 2022 WL 1087671 (S.D.W. Va. Apr. 11, 2022) (finding prior West Virginia conviction for conspiracy to possess with intent to deliver a controlled substance supported career offender enhancement because the West Virginia conspiracy statute requires an overt act and thus does not criminalize broader conduct than is required for the sentencing enhancement).

F.4th 438, 442 n.2 (4th Cir. 2022) (West Virginia statute criminalizing inchoate offenses "incapable of supporting a career offender enhancement"); *United States v. Norman*, 935 F.3d 232, 237–39 (4th Cir. 2019) (finding conspiracy to commit a controlled substance offense under 21 U.S.C. § 846 no longer qualifies as a controlled substance offense under the Guidelines); *United States v. Lancaster*, 997 F.3d 171, 176 (4th Cir. 2021).

Mr. Hernandez also received a three-level reduction for acceptance of responsibility, which would now be reduced to a two-level reduction. *See* U.S.S.G. §§ 3E1.1(a). Thus, his total offense level would be 10. Further, Mr. Hernandez would still have 14 criminal history points, which includes a two-level increase for committing an offense while under a criminal justice sentence. U.S.S.G. § 4A1.1(d). This establishes a criminal history category of VI. If sentenced today, Mr. Hernandez's guideline range would be a sentence of between 24 to 30 months of incarceration.

The United States' assertion that the Court did not sentence Mr. Hernandez as a career offender is incorrect. The Court applied the career offender enhancement in calculating the Guidelines range but varied downward. Regardless, the United States concedes Mr. Hernandez would not be a career offender if sentenced today. As noted, our Court of Appeals has suggested an enormous disparity between the sentence imposed and the sentence a defendant would receive if sentenced today may be appropriate in ascertaining the presence or absence of extraordinary and compelling reasons for relief from sentence. Such a disparity is present here.

Mr. Hernandez's original guidelines custody range was between 151 and 188 months. He was originally sentenced to 120 months imprisonment. As noted, Judge Berger varied below the Guidelines range while still finding that a lengthy sentence of imprisonment was necessary. Mr. Hernandez has served a lengthy sentence of imprisonment. He is due for release

from USP Lewisburg on September 6, 2023. If released today, he will have served approximately 111 months of his 120-month sentence.

Furthermore, the applicable § 3553(a) factors support Mr. Hernandez's release for time served. This sentence appropriately considers the nature and circumstances of Mr. Hernandez's conduct, as well as his characteristics and criminal history. It reflects the seriousness of his offense, promotes respect for the law, protects the community, and provides just punishment. This sentence additionally affords adequate deterrence and avoids unwarranted sentence disparities.

The Court remains troubled by Mr. Hernandez's history of violations while under judicial supervision. [Docs. 49 at 8–19; 137 at 6]. It appears most of these violations relate to substance abuse. [*Id.* at 22]. It is unclear whether he has received substance abuse treatment while incarcerated, but the Court finds he would benefit from such treatment upon release. Mr. Hernandez is advised that a violation of his supervised release conditions will likely warrant additional imprisonment. He will thus take advantage of any and all substance abuse treatment options made available to him by the Probation Officer during supervised release, in accordance with the conditions originally imposed by Judge Berger.

### IV.

For the foregoing reasons, the Court **GRANTS** Mr. Hernandez's Renewed Motion for Compassionate Release. **[Doc. 133]**. The Court **ORDERS** Mr. Hernandez be **RELEASED** from custody as soon as a residence is verified, a release plan is established, appropriate travel arrangements are made, and it is safe for him to travel. Mr. Hernandez shall within seventy-two (72) hours of his release from custody, contact the Probation Office.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant, to the United States Attorney, to the United States Probation Office, and to the Office of the United States Marshal. The Clerk is additionally directed to send a copy of this Order to the case manager assigned to *In re: Rhinelander Hernandez*, No. 22-2247.

ENTER:     December 22, 2022

Frank W. Volk
United States District Judge

9